UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SEAN GROS                                    CIVIL ACTION

VERSUS                                       NO: 12-2184

WARREN PROPERTIES, INC., ET                  SECTION: J(3)
AL.

### ORDER AND REASONS

Before the Court is Plaintiff's Motion to Remand **(Rec. Doc. 9)**, which was submitted to the Court on the briefs alone on November 21, 2012.  Defendants Warren Properties, Inc. ("Warren") and York Risk Services Group, Inc. ("York") have filed an Opposition to Motion to Remand (Rec. Doc. 17), to which Plaintiff has replied (Rec. Doc. 19-3).  Having considered the record, the applicable law, and the parties' submissions, the Court finds that the Plaintiff's Motion to Remand should be **DENIED** and that Plaintiff's claims against Deborah Bodine should be **DISMISSED** for reasons set forth more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

On July 25, 2012, Sean Gros ("Plaintiff") filed a personal injury suit in the 22nd Judicial District Court for the Parish of St. Tammany. (Pl.'s Pet. ¶ 1, Rec. Doc. 1-1)  Plaintiff alleges that on or about July 23, 2011, he occupied a unit in a Slidell

1

condominium building, the Anchorage Condominiums, as a tenant under a lease agreement administered by Warren Properties, Inc. ("Warren"). (Pl.'s Pet. ¶ 3, Rec. Doc. 1-1)  He further alleges that on or about July 23, 2011, he was descending a common stairway in a stair tower located within, and forming a part of, the condominium building, when the stair tower lights suddenly went off and the emergency back-up lights simultaneously failed to come on, causing the plaintiff to lose his balance, fall to the floor, and slide down the stairs on his back and rear side. (Pl.'s Pet. ¶ 3-4, Rec. Doc. 1-1)  Plaintiff alleges that he sustained serious personal injuries to his finger, back muscles, and spine as a result of his fall and the resultant slide down the stairs. (Pl.'s Pet. ¶¶ 4, 7, Rec. Doc. 1-1)

In his petition, Plaintiff named Warren, York, and Deborah Bodine ("Bodine") as Defendants. (Pl.'s Pet. ¶ 1, Rec. Doc. 1-1) Plaintiff asserted claims for negligence and strict liability against Warren, the alleged owner, operator, manager, and/or custodian of "a group of residential condominium units," who administered Plaintiff's lease of a condominium unit in the building, and Bodine, who Warren allegedly employed as the property custodian, resident manager, supervisory employee and/or landlord of the condominium units and common building areas where Plaintiff allegedly suffered injuries. (Pl.'s Pet. ¶ 1, Rec. Doc. 1-1) Plaintiff asserts that Bodine was negligent in failing to discover

or test for the vices or defects in the emergency back-up lighting, and that Bodine "and other management employees of Warren," were negligent in failing to warn of and failing to correct the defect in the emergency back-up lighting.  (Pl.'s Pet. ¶¶ 1, 6, Rec. Doc. 1-1)  Plaintiff also alleges that Bodine negligently managed and poorly supervised property maintenance employees and vendors/contractors regarding the performance of routine maintenance work on behalf of the building owners and failed to properly maintain the common areas of the condominiums.  (Pl.'s Pet. ¶ 6, Rec. Doc. 1-1)  Alternatively, Plaintiff asserts that Warren and its agents and employees knew of the danger created by the lighting, yet failed to make timely repairs or change out bulbs or fixtures.  (Pl.'s Pet. ¶ 6, Rec. Doc. 1-1)  Plaintiff named York as a defendant on the basis that York provided a liability policy covering Warren and Warren's employees.[1]  (Pl.'s Pet. ¶ 1, Rec. Doc. 1-1)

On August 31, 2012, Defendants, Warren and York, removed the action pursuant to 28 U.S.C. §§ 1332 and 1446 asserting that this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332, diversity of citizenship.  (Rec. Doc. 1)  In the Notice of Removal, Defendants asserted that the amount in controversy exceeds $75,000, that Plaintiff is domiciled in Louisiana, that Warren is

---

[1] On November 7, 2012, the Court granted Plaintiff and York's joint motion to dismiss Plaintiff's claims against York without prejudice on the grounds that Plaintiff erroneously named York as an insurance carrier when York was in fact only a third party administrator.  (Rec. Docs. 22, 25)

a Delaware corporation with its principal place of business in California, and that York is a New York corporation with its principal place of business in New Jersey. (Rec. Doc. 1, p. 3) Defendants further asserted that Bodine, the only non-diverse defendant, was improperly joined for the sole purpose of destroying federal jurisdiction, and that the Court could thus disregard Bodine's citizenship for diversity purposes (Rec. Doc. 1, p. 3) Defendants did not attach any affidavit or declaration supporting the factual contentions made in their memorandum in support of their Notice of Removal, contending that they were unable to do so as a result of Hurricane Isaac. (Rec. Doc. 1, p. 5, n. 2) Plaintiff had not requested service of process on Bodine at the time Defendants filed their Notice of Removal.[2] (Rec. Doc. 1, p. 5 n. 3)

## PARTIES' ARGUMENTS

Plaintiff argues that the civil action should be remanded to the 22nd Judicial District Court for the Parish of St. Tammany, because Bodine was properly joined as a defendant in the state

---

[2] Plaintiff explains in his reply that on August 10, 2012, seventeen days after his paper petition arrived at the clerk of state court, Michael Continho ("Mr. Continho") emailed counsel for Plaintiff on behalf of York, thanking Plaintiff's counsel for granting him an extension of time to plead and suggesting that the extension would provide enough time for *all* defendants to file a response. (Rec. Doc. 19-3, p. 4) Plaintiff also explains that when Defendants filed their Notice of Removal on August 31, 2012, there was still sufficient time for Plaintiff to timely serve Bodine. (Rec. Doc. 19-3, p. 4)

4

action.   Plaintiff emphasizes that Defendants,[3] as the parties
seeking removal, bear the burden of proving that Bodine is
improperly joined.   Plaintiff asserts that Defendants have not
carried their burden of showing that there is no possible way for
Plaintiff to recover against Bodine under Louisiana law for two
reasons.   First, Plaintiff argues that under a 12(b)(6)-type
analysis, the allegations in his pleadings must be taken as true,
and his pleadings state a claim against Bodine under Louisiana law.
Plaintiff characterizes the Defendants' burden of showing improper
joinder as a burden of showing "that there can be no possible
theory or set of facts that would allow a recovery on the claims
stated" against the non-diverse defendants.   Specifically,
Plaintiff claims that it is possible that he will be able to
recover against Bodine under Louisiana Civil Code Articles 2315,
2322, 2695, as well as under the theory of employee liability
outlined by the Louisiana Supreme Court in Canter v. Koehring, 283
So. 2d 716, 722 n. 7 (La. 1973), superseded on other grounds by
statute, La. Rev. Stat. 23:1032 (1998).   Second, Plaintiff argues
that the Court must resolve all contested factual issues in his
favor, and implies that his description of Bodine's duties in his

---

[3] The Court uses the plural term Defendants, because Warren and York
were both parties to the instant suit on October 16, 2012 when they filed
their opposition to the instant Motion to Remand.   However, because the Court
subsequently dismissed Plaintiff's claims against York without prejudice on
November 7, 2012, see supra n. 1, Warren is the only Defendant currently
opposing Plaintiff's Motion to Remand.

state court pleadings[4] create a contested factual issue that must be resolved in his favor, because it is in conflict with Defendants assertions in their Notice of Removal.[5]  Third, although Plaintiff implies that discovery is unnecessary, because the Court must resolve all contested factual issues in his favor, Plaintiff asserts that if the Court does pierce the pleadings and order discovery, the discovery should be limited to identify discrete, undisputed facts that might bar Plaintiff's recovery against Bodine.

Defendants counter that removal was proper, that the Court has diversity jurisdiction, and that Plaintiff's Motion to Remand should be denied, because Plaintiff improperly joined Bodine as a defendant.  Defendants assert that Plaintiff is unable to establish a reasonable possibility of recovery against Bodine for two reasons.  First, Defendants contend that under a Rule 12(b)(6) analysis, Plaintiff has failed to state a cause of action against Bodine under any negligence or strict liability theory.  Second, the Defendants argue that even if Plaintiff has stated a valid or reasonably arguable cause of action against Bodine under Rule

---

[4] Plaintiff argues that he has sufficiently pled in paragraphs 1 and 6 of his state court petition that Bodine had duties to maintain, inspect, and discover with respect to the common areas of the condominium complex.

[5] Plaintiff observes that Defendants' Notice of Removal was unsupported by any affidavit or declaration when filed, but does not explain the significance of this fact, and does not address the fact that Defendants submitted Bodine's declaration to support their contentions in their Notice of Removal with their opposition to the instant Motion to Remand.

12(b)(6), the Defendants, as the removing parties, may use summary judgment type evidence to establish that Plaintiff is unable to prove all facts necessary to establish the cause of action or prevail. Defendants implicitly argue that the Court should pierce the pleadings in this case, review the facts supporting improper joinder in a summary judgment type manner, and need not, under Badon v. RJR Nabisco Inc., 236 F.3d 282 (2000), resolve any factual controversies in Plaintiff's favor, unless both parties have submitted evidence of contradictory facts.

According to the Defendants, there is no factual controversy to resolve in Plaintiff's favor in this case. Defendants claim that Plaintiff's allegations that Bodine, as Warren's resident property manager and as the custodian of the condominium building, owed a duty to Plaintiff to maintain the common stairwell and the stairwell lights, are insufficient because Defendants have submitted contrary evidence. Specifically, Defendants submitted Bodine's declaration under penalty of perjury, in which she claims that currently, and at the time of the alleged incident, she was employed by Warren as a Leased Unit Manager and that her employment with Warren did not include any responsibility for, authority over, or custody of the alleged faulty lighting in the condominium stairwell where Plaintiff allegedly fell, or any other duty to maintain, inspect, or repair other common elements of the Anchorage Condominiums. (Rec. Doc. 17-1, ¶¶ 5-7, 9-11) In her declaration,

7

Bodine further avers: (1) that her sole responsibilities currently, and at the time of the alleged incident, were to lease and maintain the interior of units managed by Warren, (2) that she had no responsibility for the common elements of the condominium property on behalf of the condominium association, (3) that she never personally performed maintenance or directed others to perform maintenance on the stairwells and stairwell lighting at the time of the alleged accident, (4) that she was unaware of any problem or defect with the stairwell lighting at the time of Plaintiff's alleged accident, and (5) that she did not sign the lease agreement entered into between Plaintiff and Warren. (Rec. Doc. 17-1). According to Defendants, these facts are uncontested and negate the possibility that Bodine owed Plaintiff a duty under any of the legal theories that Plaintiff asserts, specifically addressing negligence under La. Civ. Code art. 2315, strict liability under La. Civ. Code art. 2317.1, and the theory outlined by the Louisiana Supreme Court in Canter.

In response to Defendants' opposition, Plaintiff submitted a reply to explain why he had not requested service on Bodine[6] at the time Defendants removed the action and to submit the declaration under penalty of perjury of Michael Lewis ("Lewis"), the Plaintiff's co-lessee and roommate who witnessed Plaintiff's accident. (Rec. Doc. 19-5) Plaintiff argues that Lewis's factual

---

[6] See supra n. 2.

8

claims in his declaration counter many of Bodine's factual claims in her declaration. Plaintiff argues that a fair reading of Bodine's declaration suggests that she categorically denies ever having performed maintenance or supervised others making repairs to the exterior or common areas of the condominium units. Plaintiff argues that Lewis's declaration controverts that claim, because Lewis alleges that before Plaintiff's accident on July 23, 2011, he observed Bodine supervising an employee who was supposed to be the "lawn man" working on the common lights outside the "apartments" at the Anchorage Condos. (Rec. Doc. 19-5, ¶ 4) Lewis also claims that he observed the "lawn man" wash the stairs at Bodine's instruction. (Rec. Doc. 19-5, ¶ 4) Lewis further claims that on July 20, 2011, he witnessed Bodine supervising an employee of the condos attempting to repair the elevator. (Rec. Doc. 19-5, ¶ 5) Lewis asserts that approximately ten or twelve days after the accident, he and his roommates observed Bodine supervising an employee he believed to be a "yard man" rewiring the emergency lights outside of their "apartment." (Rec. Doc. 19-5, ¶ 6) Lewis claims that Bodine and the employee appeared to be installing a new emergency light, and that when another power outage occurred after Plaintiff's accident, the emergency lights failed to come on again. (Rec. Doc. 19-5, ¶ 6) Plaintiff argues that because his pleadings clearly state a cause of action against Bodine, and Lewis's declaration creates doubt about whether Bodine supervised

9

maintenance over common areas including the condominium stairwells and lighting, the case should be remanded to state court for further proceedings.

## LEGAL STANDARDS

### A. Motion to Remand

Generally, a defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction. See 28 U.S.C. § 1441(a). Original diversity jurisdiction is appropriate where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). A defendant can remove a state action to federal court based on original diversity jurisdiction unless a properly joined defendant is a citizen of the state where the action was brought. 28 U.S.C. § 1441(b). The removing party bears the burden of establishing that federal jurisdiction exists at the time of removal. DeAquilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995). Ambiguities are construed against removal and in favor of remand, because removal statutes are to be strictly construed. Manguno v. Prudential Prop. & Cas. Ins., 276 F.3d 720, 723 (5th Cir. 2002).

### B. Improper Joinder

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of

10

the plaintiff to establish a cause of action against the non-diverse party in state court.  <u>Smallwood v. Ill. Cent. R.R.</u>, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).  When there is no allegation of actual fraud, the test for improper joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant.  <u>Id.</u> A mere theoretical possibility of recovery is not sufficient to preclude a finding of improper joinder.  <u>Id.</u>  A court should ordinarily resolve the issue by conducting a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendants.  <u>Id.</u>  Where a plaintiff has stated a claim, but has misstated or omitted discrete and undisputed facts that would preclude recovery, the Court may, in its discretion, pierce the pleadings and conduct a summary inquiry.  <u>Id.</u> at 573-74.

**DISCUSSION**

**A. Whether Plaintiff has Stated a Claim Against Bodine Under a 12(b)(6) Analysis**

Ordinarily, if the plaintiff has stated a claim against the non-diverse defendant, joinder is proper under <u>Smallwood</u>, and remand is appropriate.  385 F.3d at 574.  Thus, the Court must first determine whether the factual allegations in the pleadings state a claim against Bodine under Louisiana law.  Under the Federal Rules of Civil Procedure, a complaint must contain "a short

11

and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." <u>In re Southern Scrap Material Co.</u>, LLC, 541 F.3d 584, 587 (5th Cir. 2008). A court must draw all reasonable inferences in favor of the plaintiff. <u>Lormand v. U.S. Unwired, Inc.</u>, 565 F.3d 228, 232-33 (5th Cir. 2009). However, the Court does not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. <u>Plotkin v. IP Axess Inc.</u>, 407 F.3d 690, 696 (5th Cir. 2005). While legal conclusions may provide the framework of a complaint, they must be supported by factual allegations. <u>Iqbal</u>, 556 at 679.

Although Defendants contend that the allegations in Plaintiff's petition fail to state a claim against Bodine under a Rule 12(b)(6)-type analysis, they do not expand on this argument, instead basing their argument primarily on Bodine's declaration, which the Court does not consider in conducting a 12(b)(6)-type analysis.  Because it is unnecessary to pierce the pleadings and consider Bodine and Lewis's affidavits if the Plaintiff's petition cannot withstand a Rule 12(b)(6)-type inquiry, the Court will consider whether the factual allegations in Plaintiff's complaint state a legally cognizable claim against Bodine under Louisiana law.

Plaintiff's petition can hardly be characterized as "short," "plain," "simple," "concise," or "direct."  It is fraught with redundancy and the type of conclusory allegations and legal conclusions that the Court is not bound to accept.  However, Plaintiff claims that under the facts pled, Bodine owed Plaintiff a duty either under Louisiana Civil Code Articles 2315, 2322, 2695, 2317.1, or on the theory that Bodine's employer, Warren, delegated its duties to maintain the stairwell lighting to Bodine as resident manager, pursuant to the doctrine the Louisiana Supreme Court laid out in <u>Canter</u>.  Although Plaintiff suggests that Defendants' burden of proving improper joinder requires a showing that there is absolutely no possibility of recovery under any theory of liability *expressed or implied* from his petition, a mere *theoretical*

13

*possibility* of recovery does not preclude a finding of improper joinder. Smallwood, 385 F.3d at 573.  Moreover, the Rule 12(b)(6) standard is rigorous, and although the Court is required to assume all well-pleaded facts are true, view them in the light most favorable to Plaintiff, and draw all reasonable inferences in favor of Plaintiff, the Court may properly disregard all legal conclusions couched as factual allegations.  Applying this standard, the Court is required to disregard much of the conclusory content in Plaintiff's petition.

Articles 2315, Article 2317.1, and Canter, all establish negligence standards, and the threshold question in any negligence inquiry is whether the defendant owed the plaintiff a duty.  Hanks v. Entergy Corp., 2006-477 (La. 12/18/06); 944 So. 2d 564, 580. Whether the defendant owed the plaintiff a duty is a question of law that requires the court to engage in a fact-specific inquiry.[7] Myers v. Dronet, 01-5 (La. App. 3 Cir. 6/22/01);  801 So. 2d 1097, 1109.  However, the source of the duty and the specific factual inquiry used to determine whether a defendant owed the plaintiff a duty under Article 2315, Article 2317.1, and Canter are not identical.  Under Articles 2317 and 2317.1, the duty arises as a

---

[7] Contrary to Plaintiff's assertion otherwise, Plaintiff's claims in his petition that Bodine "was...charged with the duty to inspect, maintain, discover and remedy or repair hidden defects in the property," and "accepted this duty," are legal conclusions couched as factual allegations that need not be accepted as true for purposes of a Rule 12(b)(6) inquiry, and thus, are insufficient to create contested issues of *fact* that must be resolved in Plaintiff's favor for purposes of the improper joinder inquiry.

14

result of the defendant's status as a custodian, which hinges on a factual inquiry about the party's right of direction and control over the defective thing, and the type of benefit the party derived from the thing.  <u>Dupree v. City of New Orleans</u>, 99-3651 (La. 8/31/00); 765 So. 2d 1002, 1009.   Under Article 2315, the duty arises as a result of the relationship and circumstances of the parties, and courts examine several policy factors to determine whether to impose a duty in a particular case.  Under <u>Canter</u>, the employee's duty is the result of the employer's delegation of a duty that the employer owed to the third party to the employee. Thus, in this case, under the pleading requirements of Rule 8 and the Rule12(b)(6) standard articulated in <u>Iqbal</u> and <u>Twombly</u>, Plaintiff's mere assertion that Bodine owed a duty is insufficient in the absence of well-pled facts that would give rise to duty under one of these legal theories.

1. **Did Plaintiff State a Claim Against Bodine under <u>Canter</u>?**

Plaintiff's allegations in his petition and his argument in his Motion to Remand focus most heavily on the theory that Plaintiff has pled sufficient factual allegations to hold Bodine personally liable as Warren's agent under <u>Canter</u>.  However, the Court finds that under a Rule 12(b)(6)-type inquiry, Plaintiff has failed to state a cause of action against Bodine under the <u>Canter</u> doctrine.   Under <u>Canter</u>, a corporate officer, agent, or employee

15

may be held personally liable for injuries to third persons under certain circumstances. Guillory v. PPG Indus., Inc., 434 F.3d 303, 312 (5th Cir. 2005).  To hold the officer, agent, or employee personally liable for his damages, the plaintiff must prove the following: (1) "that the principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought," (2) that the "duty [was] delegated by the principal or employer to the defendant," (3) that the "defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault" by failing "to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances — whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty." Canter, 283 So. 2d at 721.  Finally, the Canter court explained:

> [w]ith regard to the personal (as contrasted with technical or vicarious fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment.  He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.  If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this

responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

Id.

Plaintiff has failed to plead facts establishing that Bodine's employer/principal, Warren, owed Plaintiff a duty to maintain the lighting in the common stairwell of the condominium complex where Plaintiff sustained injuries. Thus, Warren could not have delegated any duty to maintain the lighting in the common stairwell to its agent/employee, Bodine. To hold an agent or employee personally liable, the agent or employee's *principal* or *employer* must have owed the Plaintiff a duty and delegated that duty to the employee. In the instant case, Plaintiff claims that he sustained injury as a result of Bodine's breach of a duty to maintain emergency back-up lighting in a *common* stairway within the condominium building. (Pl.'s Pet. ¶ 3 Rec. Doc. 1-1) Plaintiff alleges that Bodine was Warren's agent. (Pl.'s Pet. ¶ 1, Rec. Doc. 1-1) Plaintiff alleges that Warren owned and/or operated and/or managed "*a group of* residential condominium *units*." (Pl.'s Pet. ¶ 1, Rec. Doc. 1-1) The Louisiana Condominium Act provides in pertinent part that "except to the extent provided by the declaration, or Section 1123.112,[8] the *association* is responsible

_____

[8]Section 1123.112 of the Louisiana Condominium Act places limits on the condominium association's responsibility for repairing and replacing the common elements but does not shift the responsibility for maintaining the common elements from the condominium association. <u>See</u> La. R.S. 1123.107(G).

for maintenance, repair, and replacement of the common elements, and each unit owner is responsible for maintenance, repair and replacement of his unit." La. R.S. 1123.107. Thus, the default rule in Louisiana is that the condominium association has the duty to maintain, repair, and replace the common elements of the condominium building, not owners of groups of condominium units. Plaintiff has not alleged that Warren was charged with a duty to maintain and repair the common elements of the condominium building in the condominium declaration. Absent any allegation that the condominium declaration delegated the duty of the condominium association to maintain the common elements to Warren, Warren's duties under Louisiana law, as the alleged owner of a group of condominium *units*, extended only to the maintenance of the units that Warren allegedly owned, operated, or managed. Thus, the first element of <u>Canter</u> is not satisfied in the instant case.

Moreover, even assuming that Warren had a duty to maintain the common elements on behalf of the condominium association, which it properly delegated to its alleged agent, Bodine, Plaintiff's allegations demonstrate that he is attempting to hold Bodine liable as a result of her general administrative responsibility for the performance of a function of her employment rather than the breach of a specific personal duty owed to Plaintiff. Plaintiff alleges that Bodine acted as Warren's "property custodian and resident manager and/or as a supervisory employee and/or as a landlord of

18

the condominium units ... and common buildings," and that she was negligent in failing to discover or test for the vices or defects in the emergency back-up lighting. (Pl.'s Pet. ¶ 1, Rec. Doc. 1-1) Plaintiff further alleges that Bodine "and other management employees of Warren," were negligent in failing to warn of and failing correct the defect in the emergency back-up lighting. (Pl.'s Pet. ¶¶ 1, 6, Rec. Doc. 1-1) Plaintiff also alleges that Bodine negligently managed and poorly supervised property maintenance employees and vendors/contractors regarding the performance of routine maintenance work on behalf of the building owners and failed to properly maintain the common areas of the condominiums. (Pl.'s Pet. ¶ 6, Rec. Doc. 1-1) Alternatively, Plaintiff asserts that Warren and its agents and employees knew of the danger created by the lighting, yet failed to make timely repairs or change out bulbs or fixtures. (Pl.'s Pet. ¶ 6, Rec. Doc. 1-1)

Plaintiff argues that the instant case is analogous to _Adams v. Southwood Realty_, No. 05-2471, 2005 WL 3543935 (E.D. La. Oct. 17, 2005), in which a different section of this Court found that the Plaintiff stated a claim against an apartment manager personally under _Canter_. However, _Adams_ is distinguishable from the instant case. In _Adams_, the plaintiff sued the owner of the apartment building, the owner's liability insurer, and the apartment manager after her daughter was diagnosed with lead

19

poisoning.  Id. at *1.  The Adams plaintiff alleged in her petition that the apartment manager, "was the person most familiar with the condition of the plaintiff's residence, knew of the condition of the lead paint in plaintiff's residence, and was *personally* responsible for the maintenance and repair of plaintiff's residence."  Id. at *2.  The Adams plaintiff also alleged that the apartment manager was the only person who interacted with the plaintiff, signed the lease documents, and failed to provide lead paint disclosures to the plaintiff as required by law.  Id. at *1. In the instant case, Plaintiff makes no allegation that Bodine was personally responsible for the maintenance and repair of the common elements of the condominium.  Moreover, although Plaintiff alleges that Warren and its agents knew of the allegedly defective condition of the lighting, this is a conclusory allegation that the court is not required to accept, and it does not amount to an allegation that *Bodine* personally knew of the allegedly defective condition of the emergency back-up lighting.   Thus, Plaintiff cannot properly rely on Adams to demonstrate that the factual allegations in his state court petition stated a claim against Bodine under Canter.

Although there are not many cases analyzing the personal liability of an alleged resident condominium or apartment manager under Canter, there are several cases addressing the personal liability of store and hotel managers under Canter in slip and fall

cases, which suggest that Plaintiff's allegations are insufficient to state a claim against Bodine under Canter.  E.g., Black v. Lowe's Home Ctrs., Inc., No. 10-478, 2010 WL 4790906, at *1-3 (M.D. La. Oct. 22, 2010) (allegations that store manager, *inter alia*, failed to properly supervise employees, failed to properly inspect the premises/aisle, failed to maintain a safe environment for shoppers, and failed to reorganize and eliminate dangerous condition were insufficient to hold store manager personally liable under Canter absent allegations that store manager was personally involved in creating the allegedly unreasonably dangerous condition); Bertrand v. Fischer, No. 09-76, 2009 WL 5215988, at *6-7 (W.D. La. Dec. 29, 2009) (allegations that store manager failed to properly supervise and train employees and failed to implement a procedure for inspection and cleaning of store floors were insufficient to hold store manager personally liable under Canter where store manager did not personally cause spill or have knowledge of spill that caused plaintiff to slip and fall); Carter v. Wal-Mart Stores Inc., No. 04-0072, 2005 WL 1831092, at *2-3 (W.D. La. July 28, 2005) (generic allegations that manager failed to properly supervise and train store employees and institute procedures for maintaining safe conditions of store rack that allegedly fell on customer were insufficient to hold store manager personally liable under Canter, because they concerned store manager's general administrative responsibilities); Compare Gerald

21

v. Hospitality Props. Trust, No. 09-2989, 2009 WL 1507570, at *4
(E.D. La. May 7, 2009) (allegations that hotel managers actually
knew that there were problems with condensation on the flooring
where plaintiff slipped, that hotel managers made the decision to
have plastic covering placed on an iron gate which allegedly
limited airflow and contributed to the accumulation of condensation
on the floor, and that hotel managers failed to have the covering
removed when the temperature and humidity did not drop, stated a
claim that hotel managers were personally at fault for their
decisions to have plastic covering placed on the gate and their
failure to have the covering removed); Flitter v. Walmart Stores,
Inc., No. 09-236, 2009 WL 2136271, at *3 (M.D. La. June 19, 2009)
(allegations that store manager "was aware of the fact that the
roof of the building was defective and leaked during rain showers
and was aware of the fact that the condition of the floors in the
buildings due to the leaks in the roof," and failed to remedy the
known defective condition stated a claim that store manager
breached a personal duty to the plaintiff under Canter).

The allegations in Plaintiff's petition are more analogous to
those in Black, Bertrand, and Carter than those in Gerald and
Flitter.  Because Plaintiff has not alleged that Bodine actually
knew about the allegedly defective condition of the lighting[9] and

_____

[9]Although it is unnecessary for the Court to examine the parties'
declarations as there is no allegation that Bodine knew about the allegedly
defective condition of the lighting at the time of Plaintiff's accident,

failed to take steps to repair it or that Bodine was personally involved in creating the allegedly defective condition, it appears that Plaintiff is seeking to impose liability on Bodine for a breach of general administrative duties as a resident apartment manager to supervise, inspect, and test, rather than breach of a personal duty, which <u>Canter</u> prohibits.  <u>Black</u>, 2010 WL 4790906 at *3.

### 2. Did Plaintiff State a Claim Against Bodine Under Articles 2317 and 2317.1?

Plaintiff's allegation that Bodine was Warren's agent who acted as the resident manager and/or property custodian of the common building where Plaintiff sustained injury, is insufficient to give rise to an inference that Bodine owed Plaintiff a duty under Louisiana Civil Code articles 2317 and 2317.1 by virtue of her custody of the allegedly defective stairwell lighting.  Article 2317.1 of the Louisiana Civil Code provides that:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care...

La. Civ. Code art. 2317.1

---

Bodine's allegation that she had no knowledge of any problem or defect in the emergency stairwell lighting in her declaration is uncontroverted. (Rec. Doc. 17-1, p. 2, ¶ 12)

To recover under article 2317, "a plaintiff must prove he was injured by the thing, the thing was in the defendant's custody, there was a vice or defect creating an unreasonable risk of harm in the thing, and the injured person's damage arose from such a defect." In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 838 F. Supp. 2d 497, 511 (E.D. La. 2012) (citing Spott v. Otis Elevator Co., 601 So. 2d 1355, 1363 (La. 1992)). Article 2317.1, enacted in 1996, abrogates the concept of "strict liability" in cases involving defective things and imposes a negligence standard based on the owner or custodian's knowledge or constructive knowledge of the defect. Hagood v. Brakefield, 35-570 (La. App. 2 Cir. 1/23/02); 805 So. 2d 1230, 1233 (citations omitted). The constructive knowledge requirement of 2317.1 imposes a reasonable duty to discover apparent defects in things under the defendant's garde, but cannot be construed so broadly as to revive the regime of strict liability. Id. In order to have a duty under Article 2317.1, a person must have custody of the defective thing. Custody or garde is a broader concept than ownership, and whether a person has custody of thing is a fact-driven determination that hinges on: (1) whether the party had "the right of direction and control over the thing," and (2) the type of benefit the party derived from the thing, if any. Dupree, 765 So. 2d at 1009. To determine whether a party has direction and control of a thing, courts consider factors, including "whether the party has the right to use,

24

alienate, encumber, or lease the thing, or otherwise grant a right
of use to others, whether the party has the right to authorize
alterations or repairs to the thing, and whether the party has an
unfettered right to access the thing at will, versus only a limited
access to enter." In re FEMA, 838 F. Supp. 2d at 512; See Bethea
v. Great Atlantic & Pacific Tea Co., 2007-1385 (La. App. 4 Cir.
9/30/11); 22 So. 3d 1114, 1116.

Based on Akerman v. Dawes, 94-0757 (La. App. 4 Cir. 1/19/95);
658 So. 2d 1270, the Court finds that Plaintiff has failed to plead
sufficient facts to show that Bodine had custody of the allegedly
defective stairwell lighting. In Akerman, the plaintiff fell from
the second-story porch of the apartment building where she lived
after a rotten railing collapsed. Id. at 1272. She sued, inter
alia, the apartment building manager, and the lessee of the
building alleging that both had custody of the apartment building
and were strictly liable to her under Article 2317. Id. The
plaintiff secured a default judgment against the building manager
based on evidence that he collected the rent, was the person to
contact about repairs, and had the repairs done as an agent for the
lessee. Id. at 1273. The plaintiff presented no evidence that the
building manager had any type of ownership, leasehold or other
interest in the building. Id. The court found that this evidence
was not sufficient to show that the building manager had "custody"
within the meaning of Article 2317. Id. In reaching its

25

conclusion, the Court relied on <u>Loescher v. Parr</u>, 324 So. 2d 441 (La. 1975), in which the Louisiana Supreme Court stated that while a lessee has "custody" for purposes of Article 2317 of the Civil Code, an agent does not.[10]  <u>Akerman</u>, 658 So. 2d at 1273 (citing <u>Loescher</u>, 324 So. 2d at 449).  The Court also relied on <u>Brown v. Soupenne</u>, 416 So. 2d 170 (La. Ct. App. 1982), in which the Louisiana Fourth Circuit Court of Appeals found that an agent who undertakes to manage the premises for the principal does not increase his responsibilities to third persons and cannot be held liable to the third persons by failing to perform the obligations he owes to the principal.  <u>Id.</u> at 175.

The Plaintiff in this case, like the plaintiff in <u>Ackerman</u>, has sued Bodine alleging that she was Warren's agent, the alleged owner or lessee of the condominium building, who managed the condominium building where Plaintiff allegedly sustained injury. Although Plaintiff refers to Bodine as the "landlord" of the common building where he sustained his injuries once in his state petition, (Pl.'s Pet.¶ 1, Rec. Doc. 1-1), this is a conclusory allegation that provides no information about the alleged nature of Bodine's interest, for instance whether she allegedly owned the

---

[10]Although <u>Akerman</u> was based on La. Civ. Code art. 2317, which was abrogated by La. Civ. Code art. 2317.1 in 1996, the year after <u>Akerman</u> was decided, the abrogation eliminated strict liability replacing it with a negligence regime based on the owner or custodian's actual or constructive knowledge of the defect.  <u>Hagood</u>, 805 So. 2d at 1233.  There is no indication that article 2317.1 altered the custody requirement.  Thus, <u>Akerman</u>'s interpretation of the custody requirement remains relevant and on-point.

common areas or held a lease of the common areas.[11]  Plaintiff's allegation that Bodine was the condominium building manager or property custodian is insufficient to give rise to an inference that Bodine had custody of the condominium building.  Because Plaintiff has not alleged that Bodine owned the condominium building, Plaintiff has not alleged any facts giving rise to a reasonable inference that Bodine had a right to alienate, encumber, lease, or otherwise grant a right of use in the stairwell or the stairwell lighting.  In addition, because Plaintiff alleges that the incident occurred in the common area of a condominium building, simply alleging that Bodine acted as the property custodian and resident manager of the common area where Plaintiff suffered injury does not give rise to a reasonable inference that Bodine had the right to authorize repairs where the Louisiana Condominium Act, as a default rule, places responsibility for the repair, replacement, and maintenance of the common elements of a condominium building with the condominium association.  La. R.S. 1123.107.  In addition, Plaintiff has not alleged that as a property custodian or resident manager, Bodine derived any distinct benefit from the stairwell, the stairwell lights, or the condominium buildings itself.  Thus,

---

[11] Also, in his Motion to Remand, Plaintiff does not argue that Bodine owed Plaintiff a duty that stemmed from Bodine's status as owner of the condominium building or as lessor.  (Rec. Doc. 9-1, pp. 10-13)  Plaintiff relies on Canter and the theory that Warren delegated its duties as the owner or lessor to Bodine, who Plaintiff characterizes as a resident agent whose malfeasance caused his injuries.  However, Plaintiff has not alleged any specific act of malfeasance on Bodine's part, as discussed supra Part A(1).

the Court finds that on balance, Plaintiff's allegations are insufficient to establish that Bodine had the right of direction or control over the stairwell lights in the common stairway or that Bodine derived any special benefit from the common stairwell lighting.  Consequently, the Court finds that Plaintiff failed to plead sufficient facts showing that Bodine had custody of the common stairwell lighting.

### 3. Did Plaintiff State a Cause of Action Against Bodine Under Article 2315?

Louisiana Civil Code Article 2315, which provides the general basis of negligence liability in Louisiana, states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code Ann. Art. 2315(A). To determine who is at fault for purposes of article 2315, the Louisiana Supreme Court employs a duty-risk analysis, under which the plaintiff bears the burden of proving: (1) that given the relationship and circumstances of the parties, the law imposes upon the defendant a duty of reasonable conduct for the benefit of the plaintiff, the violation of which is considered fault, (2) that the defendant's conduct fell short of the standard, (3) that the defendant's negligence was a cause-in-fact of the plaintiff's damage, and (4) that the defendant's negligence was the legal cause of the plaintiff's damage, meaning that some part or all of the plaintiff's damage should be legally ascribed to the defendant.  In

28

re FEMA Trailer Formaldehyde Prods. Liab. Litig., 838 F. Supp. 2d
at 504-05 (citing Pitre v. Opelousas Gen. Hosp., 530 So. 2d 1151,
1155 (La. 1988)).   The policy factors courts consider in
determining whether to impose a duty in a particular case include:
(1) "whether the imposition of a duty would result in an
unmanageable flow of litigation;" (2) "the ease of association
between the plaintiff's harm and the defendant's conduct;" (3) "the
economic impact on society as well as the economic impact on
similarly situated parties;" (4) "the nature of the defendant's
activity;" (5) "moral considerations, particularly victim fault;"
and (6) "precedent as well as the direction in which society and
its institutions are evolving."  In re FEMA Trailer Formaldehyde
Prods. Liab. Litig., 838 F. Supp. 2d at 505 (citing Meany v. Meany,
639 So. 2d 229, 233 (La. 1994)).

     Plaintiff contends that he has pled sufficient facts in his
state petition to render Bodine personally liable to him, because
"by dent of the implicit common sense duties imposed on persons in
her position as a resident apartment manager," she was responsible
for the safety of tenants.  (Pl.'s Mem. in Supp. of Mot. to Remand,
Rec. Doc. 9-1, p. 10)  However, Plaintiff cites no case where a
court has held a resident apartment manager personally liable for
breach of such generalized common sense duties to keep tenants
safe.  The Court finds that the policy factors described above
weigh against imposing a duty on Bodine by virtue of her status as

Warren's apartment manager or property custodian.

### 4. Did Plaintiff State a Claim Against Bodine Under Articles 2322 or 2695?

Although Plaintiff mentions Articles 2322 and 2695 as sources of personal liability for Bodine, Plaintiff has failed to plead facts showing Bodine owed Plaintiff a duty under either of these Articles.   Article 2322 governs the liability of owners of buildings, and provides:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Prior to the 2004 revisions of the Louisiana Civil Code, Article 2695 stated:

> The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.

See <u>Maiorana v. Melancon Metal Bldgs., Inc.</u>, 05-933 (La. App. 5 Cir. 4/25/06); 927 So. 2d 700, 703 n.1 (explaining that Act No.

30

821, effective January 1, 2005, revised Louisiana Civil Code, Book III, Title IX, "Of Lease" and that the former Article 2695 is a partial source for the present Articles 2696 and 2697); <u>Barnes v. Riverwood Apartments P'ship</u>, 38-331 (La. App. 2 Cir. 4/7/04); 870 So. 2d 490, 492.  Article 2696, effective since January 1, 2005, states:

> The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose.  This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee.

> La. Civ. Code art. 2696

>  Article 2697 provides:

> The warranty provided in the preceding Articles also encompasses vices or defects that are not known to the lessor.  However, if the lessee knows of such vices or defects and fails to notify the lessor, the lessee's recovery for breach of warranty may be reduced accordingly.

> La. Civ. Code art. 2697

Because Plaintiff has not alleged that Bodine was either the owner of the condominium building or Plaintiff's lessor, Plaintiff has failed to state a claim against Bodine under Article 2322 or Articles 2696 and 2697.[12]  Moreover, with respect to the allegations in Plaintiff's petition pertinent to Bodine, Plaintiff has failed

---

[12] Although it is unnecessary to consider the parties declarations where the factual allegations in the pleadings do not state a claim, the lease agreement submitted shows that Bodine was not Plaintiff's lessor.

to state a claim under any legal theory sufficient to withstand a Rule 12(b)(6) analysis.

**B. Whether it is Appropriate to Pierce the Pleadings and Consider Bodine and Lewis's Declarations**

The Fifth Circuit has acknowledged that, "there are cases, hopefully few in number, in which a plaintiff *has stated* a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." <u>Smallwood</u>, 385 F.3d at 573. In those cases, the "the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." <u>Id.</u> Although the district has discretion in determining the type of summary procedure necessary in a given case, the Fifth Circuit has cautioned that "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." <u>Id.</u> The type of discrete and undisputed facts that warrant a summary inquiry include that "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." <u>Id.</u> at 573-74 n. 12. Moreover, the Fifth Circuit emphasized that the purpose of piercing the pleadings is to simply and quickly expose the chances of the claim against the in-state defendant. <u>Id.</u> at 574. Since Plaintiff's allegations against

Bodine can not survive a Rule 12(b)(6) challenge, Bodine's joinder is improper, and it is unnecessary to pierce the pleadings to consider the declarations the parties submitted.

### CONCLUSION

In sum, the Court finds that Defendants have demonstrated that there is no reasonable basis to predict that Plaintiff will recover in a Louisiana state court on his claims against the sole non-diverse defendant, Bodine.  Consequently, Defendants have satisfied their heavy burden of demonstrating that Bodine was improperly joined and that complete diversity exists.  As a result, this Court has subject matter jurisdiction over the above-captioned matter and concludes that Plaintiff's Motion to Remand should be denied.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand **(Rec. Doc. 9)** is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Deborah Bodine are hereby **DISMISSED**.

New Orleans, Louisiana this 26th day of November, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT COURT

33